**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Grain Incorporated, et al., | No. CV-18-03371-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Barkley Ag Enterprises LLC, et al., | |
| Defendants. | |
| Northern Agri Brands, LLC, | |
| Counterclaim Plaintiff, | |
| v. | |
| Arizona Plant Breeders, Inc., et al., | |
| Counterclaim Defendants. | |
| Northern Agri Brands, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| Eric Wilkey, et al., | |
| Third-Party Defendants. | |

Pending before the Court is a motion by Counterclaim Defendants Arizona Plant Breeders, Inc. and Arizona Grain, Inc. (jointly "APB") to dismiss Counts One, Three, Four, Five, Six, and Seven of the Counterclaims filed by Northern Agri Brands, LLC ("NAB") against APB for failure to state claims upon which relief may be granted. (Doc. 33.) APB's

officers and directors, Eric Wilkey, K. Andrew Kroese, William Ken Dickey, Russell S. Dickey, and Tod V. Dickey (collectively "APB officers"), have, on behalf of themselves and their unnamed wives ("Jane Doe Defendants"), moved to dismiss all Counterclaims for failure to state claims upon which relief may be granted and insufficient process. Lockwood Seed and Grain ("Lockwood"), a distributor for APB, has moved to dismiss all Counterclaims for improper venue and lack of personal jurisdiction, and has also joined in APB's motion to dismiss for failure to state claims. (Doc. 50.)[1] For the following reasons, the motions are granted in part and denied in part.[2]

## BACKGROUND

The facts as alleged in NAB's Counterclaims (Doc. 25) are as follows. NAB is a seed company with an internal research and development division that sells seed products to farms. Several of NAB's seed products are varieties of triticale, a hybrid of wheat and rye. NAB's predecessor-in-interest Resource Seeds, Inc. owned an extensive triticale library of breeding materials from which to select to cross lines to achieve preferred genetic traits. Resource Seeds plant breeder Dr. Bob Matchett and field technician Oly Cantu developed many triticale varieties, including the one at issue in this case, SY 158T. SY 158T is an "awned" triticale variety, meaning it has bristle-like appendages.

In 2014, Plant Variety Protection (PVP) Certificate No. 201200083 was issued to Syngenta (NAB's predecessor-in-interest and Resource Seeds' successor-in-interest) pursuant to 28 U.S.C. § 2482 for SY 158T. The PVP Certificate was subsequently assigned to NAB. At all times relevant herein, the PVP Certificate for SY 158T was and remains in full force and effect. NAB and its predecessors only authorized sales of PVP protected triticale seed varieties with written notice containing statutorily designated language signifying that: (1) the seed was protected under the Plant Variety Protection Act (PVPA);

---

[1] APB and the APB officers are referred to herein collectively as "APB Defendants." APB, the APB officers, and Lockwood are referred to herein collectively as "Defendants."
[2] All parties have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

(2) unauthorized propagation or multiplication of the seed was prohibited; and (3) use of the seed by the purchaser was authorized only for purposes of growing a commercial crop of grain. NAB required such notice on all bags of triticale seed sold and on notices accompanying all bulk sales of such triticale seed. In addition, NAB consistently and prominently marked the varieties with statutory PVPA notices on its marketing and promotional materials for such varieties.

Resource Seeds also developed awnless triticale varieties, which do not have the bristle-like appendages of SY 158T. On October 19, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,969,219 (the "219 Patent" or the "Patent"), entitled "Awn-inhibitor genes for triticale and their use." The 219 Patent is directed towards awn-inhibitor triticale genes. The Patent includes 36 claims, including independent claims 1, 18, and 36 at issue in this case. Resource Seeds assigned the Patent to Syngenta, and thereafter, Syngenta assigned the Patent to NAB. NAB and its predecessors sold its seed in bags together with a limited label license prohibiting use of the seed for any commercial purposes, including breeding or multiplication.

During his employment with Resource Seeds and Syngenta, technician Cantu had access to all breeding materials and germplasm, including direct access to both awnless and awned breeding materials of triticale and the crossing and progeny of triticale undergoing various stages of generational breeding and selection. In 2010, Cantu announced he was leaving Syngenta. Prior to leaving Syngenta, Cantu communicated with Albert Carleton, the former owner and president of APB, to arrange a replacement job. Cantu then secretly and without authority accessed, secured, and removed a portion of triticale breeding materials and related information contained within confidential breeding records, including records covering SY 158T, and took these materials to APB. At APB, Cantu and Carleton used the materials to establish a directly competitive triticale breeding program founded upon Syngenta's triticale breeding materials.

In 2015, NAB observed awnless triticale varieties in various stages of growth and development in APB test plots. NAB became concerned that the awnless triticale varieties

observed in APB plots were either (1) the product of unauthorized use of NAB's breeding materials and other patented awnless triticale varieties that were misappropriated by Cantu prior to his departure from Syngenta, or (2) the product of APB's unauthorized and illegal efforts to breed against NAB's patented awnless triticale varieties, or (3) both.

During the summer of 2017, APB president Eric Wilkey proposed a license for awnless triticale payable to NAB for the use of awnless varieties APB claimed to possess. Wilkey confirmed APB was actively licensing a triticale variety to Lockwood for distribution to the public. Wilkey further acknowledged that SY 158T, NAB's awned triticale, was "one of the parents" of APB's "RAPTOR" triticale.

In September 2017, NAB obtained samples of APB's RAPTOR triticale from Lockwood. According to the seed bag label, the seed had been tested in September 2017 for germination and purity and claimed a lot number of "RAPTOR 17-1." NAB planted the RAPTOR triticale in areas immediately adjacent to SY 158T to perform agronomic study. NAB then observed the growth of the two triticale varieties and compared the information, concluding that RAPTOR was the same variety as SY 158T. According to NAB, the plants in each test plot had identical characteristics. NAB then submitted samples for scientific testing and obtained test results concluding RAPTOR branded triticale genetically matched SY 158T triticale.

On October 19, 2018, APB filed suit against NAB. (Doc. 1.) The amended complaint, filed March 14, 2019, requested declaratory judgments that APB had not infringed the PVPA or misappropriated trade secrets and alleged tortious interference with prospective business relations, unfair competition, aiding and abetting tortious conduct, and civil conspiracy. (Doc. 16.) On April 16, 2019, NAB filed its answer and affirmative defenses and alleged seven counterclaims against Defendants: (1) infringement under the PVPA; (2) infringement of the 219 patent; (3) trade secret misappropriation pursuant to Arizona law, (4) California law, and (5) federal law; (6) conversion; and (7) unjust enrichment. (Doc. 25.) On May 31, 2019, APB filed this motion to dismiss Counts One and Three through Seven on behalf of APB and all Counts on behalf of Third-party

Defendants. (Doc. 33.)

## DISCUSSION

### I.     Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted).

When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist*., 37 F.3d 517, 521 (9th Cir. 1994). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

/ / /

/ / /

## II. Analysis

### A. Lockwood's Motion to Dismiss for Lack of Jurisdiction and Improper Venue

As an initial matter, in its Opposition to Lockwood's motion to dismiss, NAB states that "it is not asserting patent infringement, trade secret misappropriation, or conversion claims against Lockwood." (Doc. 53 at 2 n.2.) Accordingly, these claims are dismissed as to Lockwood.

As to the remaining claims for infringement under the PVPA and unjust enrichment, NAB must demonstrate that personal jurisdiction exists over Lockwood. "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Harris Rutsky & Co. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Arizona Rule of Civil Procedure 4.2(a) allows state courts to exercise personal jurisdiction to the extent permitted by the state and federal constitutions. The Court must therefore examine whether exercising jurisdiction over Lockwood comports with due process. *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997).

Specific personal jurisdiction[3] is appropriate when: (1) the defendant purposefully directed its activities or consummated some transaction with the forum or a resident of the forum, or performed some act by which it purposefully availed itself of the privileges of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Harris*, 328 F.3d at 1129. NAB argues that exercise of specific personal jurisdiction over Lockwood is appropriate because the unsigned licensing agreement between Lockwood and APB provided by Lockwood in discovery, (Doc. 55-1), includes an Arizona choice of law/jurisdiction clause and "raises the reasonable inference . . . that the agreement was negotiated in Arizona, that royalties were paid to APB . . . and that Lockwood employees

---

[3] NAB relies solely on the exercise of specific jurisdiction, not general jurisdiction, in its claim against Lockwood. (Doc. 53 at 13n.4.) Thus, the Court addresses only specific jurisdiction here.

- 6 -

. . . travelled to Arizona in connection with this Agreement," (Doc. 53 at 6). Moreover, NAB asserts that Lockwood "sold seed protected by NAB's PVPA certificate to an Arizona entity."[4] *Id.*

Lockwood cites *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), for the proposition that a "defendant's negotiation and entry into a contract with a forum resident, standing alone, is not enough to confer personal jurisdiction over the defendant in that forum for torts allegedly committed outside the forum." (Doc. 59 at 5.) Unlike NAB, however, the plaintiffs in *Bristol-Myers* were not domiciled in the state where the action was brought—the court even distinguished its case from a case where specific personal jurisdiction existed by stating, in part, "here the nonresidents' claims involve . . . no harm to California residents." *Id.* at 1782. And unlike Lockwood, the *Bristol-Myers* defendant was not alleged to have engaged in "relevant acts" with its contract partner in the forum; nor was it alleged that that the harm caused by the *Bristol-Myers* defendant originated with its contract partner, as NAB alleges here. *Id.* at 1783. Finally, *Bristol-Myers* is particularly inapposite here, where NAB has brought suit in its home state, because the court concluded in dicta that the non-resident plaintiffs "could probably sue together in their home States" (though it did not explain whether that was because the plaintiffs' home states were the location of their harm or the location of their residence (or both)). *Id.*

Although a "contract with an out-of-state party alone can[not] . . . establish sufficient minimum contacts in the other party's home forum," if the contract demonstrates that the defendant contemplated a long-term interdependent relationship in the forum state, the defendant cannot argue that its relationship to that state is "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985). In *Burger King*, Burger King, a Florida corporation, brought an action in Florida federal district court when

---

[4] It is unclear whether NAB is referring to its allegation that Lockwood provided NAB with RAPTOR, or whether it is referring to an email from Dianna Alexander of Lockwood to Carolyn Grzecka and Eric Wilkey of APB discussing Lockwood selling the accused triticale seed back to Arizona Grain in Arizona (Doc. 58-3). Regardless, NAB has not alleged that Lockwood sold RAPTOR to any *consumer* in Arizona.

Rudzewicz, a Burger King franchise owner, refused a termination order and continued to operate a Burger King restaurant in Michigan. *Id.* The court found that although Rudzewicz did not maintain offices in or ever visit Florida, the franchise dispute grew directly out of "a contract which had a substantial connection with [Florida]" because Rudzewicz deliberately "reach[ed] out beyond" Michigan and "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida."[5] *Id.* at 479–480. Consequently, the court held that the Florida district court's exercise of jurisdiction did not offend due process.

Lockwood argues that its contract with APB does "not create an ongoing relationship in [Arizona]; instead . . . it create[s] an ongoing relationship for obligations in [California]." *Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 786–87 (S.D. Cal. 2019). But unlike the plaintiff in *Bartel* who provided no evidence that the defendant "reached out and invoked the benefits or protections" of the forum state's laws, *id.* at 787, NAB has shown that Lockwood agreed to an Arizona choice of law/jurisdiction clause and has raised "the reasonable inference" that the Lockwood/APB agreement "was negotiated in Arizona, that royalties were paid to APB . . . and that Lockwood employees . . . travelled to Arizona in connection with this Agreement," (Doc. 53 at 6). The Court agrees with NAB that Lockwood's license agreement with APB provides sufficient evidence to support a prima facie case for specific personal jurisdiction.

Because Lockwood is subject to personal jurisdiction in the District of Arizona, it "resides" here, 28 U.S.C.A. § 1391(c),[6] and venue is proper, 28 U.S.C.A. § 1391(b).[7]

---

[5] The 20-year contract required franchisees to pay monthly royalties, advertising and sales promotion fees, and rent. Franchisees also agreed to submit to Burger King's exacting regulation of every conceivable aspect of their operations. The documents also emphasized that Burger King's operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami.

[6] "(c) Residency.--For all venue purposes-- (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . ."

[7] "(b) Venue in general.--A civil action may be brought in--(1) a judicial district in which

Lockwood's motion is therefore denied as to lack of personal jurisdiction and improper venue.

### B. Claims Against Corporate Officers and Jane Doe Defendants

NAB brings seven claims against the APB Officers and names their wives as Jane Doe Defendants: Eric Wilkey (president of APB and AGI, serves on the Board of Directors of both) and Jane Doe Wilkey; K. Andrew Kroese (vice president of APB and AGI, CFO of AGI, Board of Directors of APB) and Jane Doe Kroese; William Ken Dickey (vice president of APB and AGI, Board of Directors of both) and Jane Doe Dickey; Russell S. Dickey (corporate secretary of APB, Board of Directors of AGI) and Jane Doe Dickey; and Tod V. Dickey (Board of Directors of AGI) and Jane Doe Dickey.

With respect to each of the corporate officers, NAB alleges personal liability "for actions alleged herein against APB because [they] authorized, directed, and/or participated in the tortious conduct." (Doc. 25 at 16.) In addition, NAB alleges that Eric Wilkey "offered to pay to NAB a royalty on certain 'awnless' triticale varieties"; that "according to Wilkey, APB proposed a license for awnless triticale payable to NAB from APB for the use of awnless varieties APB claimed to possess"; that "Wilkey also confirmed APB is actively licensing a triticale variety to Lockwood Seed and Grain for distribution to the public"; and that "Wilkey further acknowledged that SY 158T is 'one of the parents' of the RAPTOR triticale." (Doc. 25 at 25.) No further allegations are made specifically against the APB Officers and no specific allegations are made against the "Jane Doe" Defendants.

NAB submits that although it is "working with limited facts about the inner workings of APB" at the pre-discovery stage, it is "likely that each of the named individual defendants knew of the rights owned by NAB and its predecessors, and authorized or directed the breeding program that infringed on NAB's patent/PVP rights, misappropriated NAB's trade secret rights, and wrongfully took control or dominion over the SY 158T seeds in violation of the limited label licenses." (Doc. 35 at 19.) Although it is true that

any defendant resides, if all defendants are residents of the State in which the district is located . . ."

- 9 -

NAB's Counterclaims "do[] not contain any specific factual allegations regarding [the Third-party Defendants'] involvement in the actions giving rise to this lawsuit," *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013), "[w]hen the entire factual context is considered, it is clear that [NAB] has 'nudged [its] claim[ ]'" that APB's corporate officers were aware of the unlawful behavior alleged by NAB "across the line from conceivable to plausible," *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)). "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible. . . . We relax pleading requirements where the relevant facts are known only to the defendant." *Id.*

Here, where NAB alleges APB infringed on NAB's rights to PVPA- and patent-protected triticale varieties, the inference of APB's corporate officers' culpability is plausible. NAB alleges that APB President Eric Wilkey made statements that show his awareness and control of the violations alleged here. Unlike in *Blantz,* where "common sense require[d] [the court] to reject the allegation that the Chief Medical Officer for the state-wide prison system, who sits on the Governing Body, was personally involved in the decision to terminate Blantz as an independent contractor nurse at Calipatria state prison or to give her a negative job reference," 727 F.3d at 927, it is not implausible to assume that if APB's president was aware of the alleged violations, the other corporate officers named here were similarly aware.

Defendants also move to dismiss all claims as to the Jane Doe Defendants because they assert that NAB's claims against the Jane Doe Defendants are too conclusory. Citing *Doe v. United States*, 2018 WL 2431774, at *1 (D. Ariz. May 30, 2018), Defendants argue that claims against a defendant's spouse cannot survive a motion to dismiss if such allegations are simple assertions that all relevant acts were committed during a marriage and on behalf of a marital community. But *Doe*'s holding that the defendant husband could

not plausibly have engaged in sexual acts with the plaintiff prisoner for the benefit of his marital community, *id*., is inapposite in this case where the APB Officers allegedly committed torts for financial gain. "The controlling question, in determining liability of the marital community for the tort of the spouse, is whether the tort is calculated to be, is done for, or results in a benefit to the community." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at *7. Here, it is reasonable to infer that if, as NAB alleges, the APB Officers committed the alleged acts for financial gain, they did so for the benefit of their marital community. *See* Ariz. Rev. Stat. Ann. § 25-211 ("All property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is: 1. Acquired by gift, devise or descent. 2. Acquired after service of a petition for dissolution of marriage, legal separation or annulment . . .").

Defendants also assert that the claims against the Jane Doe Defendants should be dismissed because the use of "Jane Doe" to identify a defendant is generally disfavored in federal courts and NAB has provided no explanation for its failure to identify the Jane Doe Defendants by name. However, because NAB has properly identified the APB Officers, the Court will allow NAB 90 days to discover the names of the Jane Doe Defendants and amend the complaint accordingly. Defendants' motion to dismiss all claims as to the APB Officers and the Jane Doe Defendants is therefore denied at this stage, and the Court includes these Defendants in its below analysis.

### C. Count One: Infringement of PVP Certificate No. 201200083

NAB alleges Defendants "used, conditioned, marketed, sold, and/or stocked NAB's triticale varieties in the United States in violation of the PVPA" and "dispensed NAB's triticale varieties, in a form which can be propagated, without restriction to other growers, in violation of the PVPA." (Doc. 25 at 26.) However, as PVP Certificate 201200083 covers only the SY 158T triticale variety, (Doc. 25-1), and SY 158T is the only triticale variety named in connection with the PVPA in NAB's Counterclaims, the Court will only address

Defendants' alleged "use[], condition[ing], market[ing], [sale], and/or stock[ing]" and "dispens[ing]" of SY 158T in this Count, despite NAB's use of the plural term "triticale variet*ies*" (emphasis added).

Defendants challenge the assertion that its RAPTOR triticale is identical to NAB's protected SY 158T variety but concede that they must treat that allegation as true for purposes of a 12(b)(6) motion. Defendants nevertheless argue that they cannot be held liable under the PVPA for dispensing SY 158T unless they had actual or constructive notice that the seed was a protected variety at the time of dispensing. *See Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1275 (Fed. Cir. 2006) ("The trial court's construction of the provision erroneously omits a necessary element of an infringement claim under § 2541(a)(6): that the accused infringer had notice that the seed it was dispensing was PVPA protected."). NAB counters that notice is "not [an] element[] that must be established by the PVP certificate owner," but rather an "affirmative defense[] that must be raised by the counter defendant," (Doc. 35 at 8.); however, NAB provides no authority for this assertion.

Nevertheless, NAB asserts that "at all times relevant herein, the Counterclaim Defendants and Third-party Defendants had actual notice and knowledge that the SY 158T variety was federally protected by the PVPA," (Doc. 25 at 19.), in part because "NAB and its predecessors only authorized sales of the PVP protected triticale seed varieties with written notice containing statutorily designated language signifying that the seed was protected under the PVPA."[8] (Doc. 25 at 19.) Although the PVP Certificate for SY 158T, No. 201200083, was not issued until June 25, 2014, NAB asserts that this statutory

---

[8] "Owners may give notice to the public by physically associating with or affixing to the container of seed of a variety or by fixing to the variety, a label containing either the words 'Unauthorized Propagation Prohibited' or the words 'Unauthorized Seed Multiplication Prohibited' and after the certificate issues, such additional words as 'U.S. Protected Variety.' In the event the variety is distributed by authorization of the owner and is received by the infringer without such marking, no damages shall be recovered against such infringer by the owner in any action for infringement, unless the infringer has actual notice or knowledge that propagation is prohibited or that the variety is a protected variety, in which event damages may be recovered only for infringement occurring after such notice." 7 U.S.C.A. § 2567.

language was required on all its seed bags "at all relevant times," (Doc. 25 at 19.), presumably including the years after SY 158T was developed but before the PVP Certificate was issued. Taking NAB's factual assertions as true, this would mean that at any time APB Defendants encountered an SY 158T seed bag, even prior to the issuance of the PVP Certificate, they were on notice that unauthorized propagation was prohibited under the PVPA. However, even under the favorable standard of a motion to dismiss, NAB has not plausibly alleged that *Lockwood* had notice that the seeds it purchased from APB Defendants were PVPA protected. Even if the statutory language was always present on NAB's bags, it is not reasonable to infer that APB Defendants would be using those same bags in reselling SY 158T as RAPTOR to Lockwood—nor has NAB provided any factual allegations to support this idea. This claim is accordingly dismissed as to Lockwood.

NAB also asserts that in 2017, Wilkey acknowledged that SY 158T is one of the parents of the RAPTOR triticale. Defendants argue this statement leads "to the reasonable inference that . . . RAPTOR was a lawfully developed plant variety derived by crossing SY 158T with another triticale variety." (Doc. 33 at 6.) Construed in the light most favorable to NAB, the allegations are sufficient to infer that the APB Defendants would have been on notice that SY 158T was PVPA protected, even if Defendants encountered SY 158T before the PVP certificate was issued in 2014. NAB has thus stated a claim for infringement of the PVPA sufficient to survive a motion to dismiss against the APB Defendants.

Defendants additionally argue that NAB's Counterclaims fail to state a claim for PVPA infringement pursuant to 7 U.S.C. § 2566, which requires the filing of a complaint or counterclaim for infringement within one year of the infringement being "known to the owner." Defendants argue that NAB's Counterclaims fail because "NAB first suspected infringement back in 2015" and "the most recent PVPA infringement alleged in the Counterclaims occurred in September 2017." (Doc. 33 at 7.) But NAB's *suspicions* do not constitute knowledge under 7 U.S.C. § 2566. And the fact that the alleged infringement occurred in September of 2017 does not necessarily mean that NAB had knowledge then, either. Instead, as NAB notes in its Response to the Motion to Dismiss, NAB did not know

that APB's RAPTOR variety genetically matched SY 158T in violation of the PVPA until it received the results of a scientific comparison of the two varieties on July 10, 2018. As NAB's Counterclaims were filed on April 16, 2019, its Counterclaim for PVPA infringement was timely filed. APB Defendants' motion is denied with respect to this claim.

### D. Count Two: Infringement of the 219 Patent (APB Officers Only)

NAB alleges APB Defendants "directly infringe the '219 patent by making, using, selling, or offering to sell or license certain awnless triticale varieties in the United States without authority from NAB or its predecessors, within the United States in violation of 35 U.S.C. § 271(a)."[9] (Doc. 25 at 27.) APB does not challenge this claim as to itself in its motion to dismiss; thus, the Court addresses it only with respect to the APB Officers.

NAB alleges that in 2017, Wilkey "offered to pay to NAB a royalty on certain 'awnless' triticale varieties" and that "according to Wilkey, APB proposed a license for awnless triticale payable to NAB from APB for the use of awnless varieties APB claimed to possess." While these statements would have indicated Wilkey was "mak[ing] . . . [a] patented invention" in violation of 35 U.S.C. § 271(a), the 219 Patent expired on December 3, 2016, 20 years after the filing date of December 3, 1996. *See* 35 U.S.C.A. § 154.[10] Thus, in 2017, the APB Officers would not have been guilty of patent infringement even if they were growing NAB's awnless triticale varieties.

However, NAB also alleges that in 2015, persons who were authorized by APB to tour test plots that had been planted by APB discovered the presence of awnless triticale varieties in various stages of growth and development. NAB suggests that these varieties

---

[9] "(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C.A. § 271.

[10] "(2) Term.--Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under section 120, 121, 365(c), or 386(c) from the date on which the earliest such application was filed."

were the product of APB's efforts to breed NAB's awnless triticale varieties in violation of the Patent. As the Court has already determined that "[NAB] has 'nudged [its] claim[ ]'" that APB's corporate officers were aware of the unlawful behavior alleged by NAB "across the line from conceivable to plausible," *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)), APB's motion is denied as to NAB's infringement claim against the APB Officers.

### E. Counts Three, Four, and Five: Trade Secret Misappropriation Pursuant to Ariz. Rev. Stat. Ann. § 44-401(4)), Cal. Civ. Code § 3246.1(D), 18 U.S.C. § 1836

NAB argues that its breeding materials, seedstock, parental lines, and accompanying data and logs constitute trade secrets under Ariz. Rev. Stat. Ann. § 44-401(4) (AUTSA), Cal. Civ. Code § 3246.1(D) (CUTSA), and 18 U.S.C. § 1836 (DTSA) "because they are scientific and technical information . . . deriving independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." (Doc. 25 at 29.) NAB alleges APB Defendants misappropriated these trade secrets because they acquired them from a person who knew or had reason to know that the trade secrets were acquired by improper means (presumably field technician Cantu) and disclosed or used them without express or implied consent, at a time when APB Defendants knew or had reason to know that the trade secrets were acquired under circumstances requiring their secrecy to be maintained or their use to be limited. *See* Ariz. Rev. Stat. Ann. § 44-401(2). NAB appears to rely on APB's alleged growth and development of awnless triticale varieties and APB's distribution of RAPTOR, a genetic match of SY 158T, as evidence of this misappropriation, but does not explicitly state that in its pleadings.

APB Defendants argue that, regarding the materials that Cantu allegedly brought to APB in 2010, NAB has not "state[d] sufficient factual allegations that APB and the Third-Party Defendants obtained those trade secrets from Mr. Cantu when they knew or should

have known that Mr. Cantu acquired them through improper means. Instead, NAB baldly alleges only that: 'On information and belief, Cantu misappropriated the TS and breeding information at the direction and request of APB.'" (Doc. 33 at 8.) Moreover, APB Defendants argue that NAB's state law claims are stale. *See* Ariz. Rev. Stat. Ann. § 44-406; Cal. Civ. Code § 3426.6.[11]

NAB's allegations that Cantu misappropriated confidential breeding materials, seedstock, parental lines, and accompanying data and logs are supported by NAB's allegations that it observed the growth of awnless triticale in APB's test plots and that RAPTOR was a genetic match for SY 158T. Moreover, the claims cannot be determined to be stale at this stage, as it is not yet clear at what point NAB discovered Cantu's misappropriation.

APB Defendants also argue that the CUTSA claim should be dismissed because NAB does not allege conduct by APB Defendants that occurred in California. But APB Defendants do not dispute that Lockwood is a licensee of APB that sells RAPTOR in California. And NAB has alleged that it obtained samples of RAPTOR in 2017 distributed by Lockwood and found that those samples genetically matched SY 158T. NAB argues that use of a trade secret "has been equated with 'commercial use,' and has been liberally defined to include both the sale of the trade secrets themselves, as well as the 'commercial operation' of those trade secrets within profit-seeking endeavors," *Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 265 (5th Cir. 2014); APB Defendants cite no caselaw to the contrary. Thus, because NAB alleges that APB sold SY 158T to a licensee who then sold it in California as recently as 2017, NAB has alleged facts sufficient to establish APB Defendants' use of NAB's trade secrets under both CUTSA and DTSA.[12] APB Defendants'

---

[11] "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim."

[12] DTSA applies to "any misappropriation of a trade secret . . . for which any act occurs on or after . . . the enactment of [the] Act" on May 11, 2016. *Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, No. 16-CV-03737-JCS, 2017 WL 412524, at *8 (N.D. Cal. Jan. 31, 2017).

motion is therefore denied as to Counts Three through Five.

### F. Count Six: Conversion

NAB claims APB Defendants "intentionally engaged in acts of wrongful control or dominion over the triticale seed in derogation of NAB's possessory right thereto, seriously interfering with NAB's right to control the seed, by virtue of interfering with NAB's exclusive rights to the seed." (Doc. 25 at 33-34.) To establish a claim for conversion, a plaintiff must show "ownership or right to possession of property, wrongful disposition of the property right and damages." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). As APB Defendants argue, the only authority NAB would have to show ownership or right to possession of "the seed" derives from the 219 Patent or protection under the PVPA. (Doc. 33 at 9.) But these two authorities sufficiently provide NAB a claim for conversion.

APB Defendants argue that the Patent cannot establish NAB's ownership over the seed covered by the Patent because the Patent expired in 2016. However, NAB alleges APB Defendants were interfering with NAB's exclusive rights by growing and developing awnless triticale varieties in violation of the Patent when those varieties were still protected in 2015. APB Defendants also argue that *Dow Chemical Co. v. Exxon Corp.*, 139 F.3d 1470 (Fed. Cir. 1998), establishes that "patent law preempts torts that would offer patent-like protection to subject matter addressed by federal law." (Doc. 33 at 10.) Yet the *Dow Chemical* court relied on a Supreme Court decision analyzing whether an Ohio trade secrets statute clashed with the objectives of federal patent laws, namely: providing an incentive to invent, promoting the full disclosure of inventions, and ensuring that things in the public domain cannot be removed by the States. 139 F.3d at 1474. The *Dow Chemical* court then held that a state law tort claim "is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." 139 F.3d at 1473. Here, a cause of action for conversion relying on the authority of a patent does not "clash" with the objectives of providing an incentive

to invent, promoting the full disclosure of inventions, and ensuring that things in the public domain cannot be removed by the States. APB Defendants have cited no other authority for the proposition that a cause of action for conversion based on the authority of a patent is preempted by patent law. APB Defendants' motion is denied with respect to NAB's claim for conversion of triticale varieties covered by the patent.

Regarding a claim for conversion under the authority of the PVPA, APB references its argument under Count One that NAB has failed to allege that APB had notice that SY 158T was PVPA-protected. For the reasons articulated in the Court's analysis of Count One, that argument fails. APB's motion is denied with respect to NAB's claim for conversion of SY 158T.

### G. Count Seven: Unjust Enrichment

NAB argues that Defendants "were enriched by their acquisition and use of NAB's triticale germplasm, pedigree information concerning NAB's products, and other proprietary triticale breeding information." (Doc. 25 at 34.) NAB further argues that Defendants' enrichment caused NAB damage without justification, and that there is no remedy available at law for that damage. NAB apparently refers to technician Cantu's alleged theft in 2010, APB's alleged subsequent production of SY 158T and patented awnless triticale, and Lockwood's sale of SY 158T. NAB's claim for unjust enrichment therefore arises out of some of the same facts and circumstances as its claim for trade secret misappropriation.

"Any claim that is based on, or rooted in, or inescapably relies on, misappropriation is preempted" by the AUTSA. *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1059 (D. Ariz. 2013). In other words, "if proof of a non-[A]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements or proof were necessary to establish it." *Id*. This contrasts with claims "largely based on conduct unrelated to" misappropriation of trade secrets, such as "claims for intentional interference with contractual relationship and prospective economic advantage . . . alleg[ing] that Defendants interfered with and

disrupted [Plaintiff's] business relationships by soliciting his clients and misleading them," or claims "that Defendants are maintaining possession of [Plaintiff's] computer without his authorization." *Kovesdy v. Kovesdy*, No. C 10-02012 SBA, 2010 WL 3619826, at *3 (N.D. Cal. Sept. 13, 2010). Here, NAB relies heavily on fact allegations that are based on or rooted in misappropriation of trade secrets. NAB brought these claims over APB's development of awnless triticale because it believes that variety is "either (1) the resulting product of unauthorized use of NAB's breeding materials and other patented awnless triticale varieties that were misappropriated by Cantu prior to his departure from Syngenta Seeds, Inc. or (2) the product of APB's unauthorized and illegal efforts to breed against NAB's patented awnless triticale varieties, or (3) both." (Doc. 25 at 25.) NAB brought claims based on APB and Lockwood's sale of RAPTOR triticale because "RAPTOR branded triticale genetically matched NAB's SY 158T triticale variety." (Doc. 25 at 26.) NAB has not provided any factual allegations in support of unjust enrichment that are not related to theft of APB's proprietary information. This claim is therefore preempted by the AUTSA. Defendants' motion is granted with respect to unjust enrichment.[13]

## CONCLUSION

NAB has plausibly stated a claim as to APB Defendants on Counts One through Six. The Court will allow NAB 90 days to discover the names of the Jane Doe Defendants and amend the complaint accordingly. As NAB is not asserting patent infringement, trade secret misappropriation, or conversion claims against Lockwood, Counts Two through Six are dismissed as to Lockwood. As NAB has failed to state a claim against Lockwood on infringement of the PVP certificate, Count One is dismissed as to Lockwood. Count Seven is preempted by the AUTSA and is accordingly dismissed as to all Defendants.

/ / /

/ / /

/ / /

---

[13] As the parties did not discuss AUTSA preemption with respect to the conversion claim, the Court does not consider that argument here.

**IT IS THEREFORE ORDERED** that Counterclaim and Third Party Defendants' Motion to Dismiss (Doc. 33) and Third Party Defendant Lockwood Seed and Grain's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim (Doc. 50) are **GRANTED IN PART** and **DENIED IN PART** as set out below:

1. NAB's Counterclaims (Doc. 25) One, Two, Three, Four, Five, and Six shall be dismissed without prejudice as to Lockwood. Counterclaim Seven shall be dismissed without prejudice as to all Counterclaim Defendants and Third Party Defendants.

2. The claims above are dismissed with leave to amend. NAB shall have **30 days** from the date of this Order to file amended counterclaims, if they wish to do so.

3. NAB shall have **90 days** to discover the names of the Jane Doe Defendants and amend the counterclaims accordingly.

Dated this 7th day of November, 2019.

_____
G. Murray Snow
Chief United States District Judge