**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Grain Incorporated, et al., | No. CV-18-03371-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Barkley Ag Enterprises LLC, et al., | |
| Defendants. | |
| Northern Agri Brands, LLC, | |
| Counterclaim Plaintiff, | |
| v. | |
| Arizona Plant Breeders, Inc., et al., | |
| Counterclaim Defendants. | |
| Northern Agri Brands, LLC, | |
| Third-Party Plaintiff, | |
| v. | |
| Eric Wilkey; et al., | |
| Third-Party Defendants. | |

Pending before the Court are Lockwood Seed and Grain's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim, (Doc. 68); Northern Agri Brands, LLC ("NAB")'s Motion for Leave to Supplement Opposition to Motion to Dismiss and to

1 | Seal Document Exhibits A & B in Support of Supplemental Opposition, (Doc. 81); NAB's Motion to Amend/Correct Amended Counterclaim, Amended Third Party Complaint, (Doc. 84); and NAB's Motion to Seal Document Declaration of Glenn Johnson and Exhibits 1-8 iso Reply re Motion for Leave to Amend, (Doc. 93).[1] The Motion to Dismiss is granted in part and denied in part, the Motion for Leave to Supplement is denied, the Motion to Amend/Correct is granted, and the Motion to Seal is granted.

## BACKGROUND

Because the factual background of this case was summarized in the Court's order on Lockwood's prior motion to dismiss, the Court will not restate it here. (*See* Doc. 62 at 2–5.)

## DISCUSSION

**I.  NAB's Motion for Leave to Supplement Opposition to Motion to Dismiss**

NAB requests leave to supplement its opposition to Lockwood's Motion with "new and material information" from the initial production of materials by Arizona Plant Breeders ("APB")/Arizona Grain. (Doc. 81 at 4.) In addition to two exhibits, NAB's motion includes a four-page "Supplemental Opposition."

Local Rule of Civil Procedure 7.2 generally does not allow filings by the party opposing a motion beyond a "responsive memorandum." NAB has not provided a compelling reason for the Court to consider this supplemental information, which was available to NAB when it filed its original Opposition to Lockwood's Motion to Dismiss back on January 22, 2020. In response to the suggestion that "this information could have been contained in NAB's Opposition to the Motion to Dismiss filed in January," NAB asserts that "Attorney Scott Johnson had left the McKee firm at nearly the same time as Lockwood filed its second Motion to Dismiss." (Doc. 91 at 2.) Nevertheless, remaining counsel filed NAB's Opposition and did not raise this issue with the Court prior to filing the instant Motion for Leave to Supplement. Attorney Johnson's departure—the only

---

[1] The parties have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

rationale provided to support this Motion—is not sufficient reason to allow supplementation. The Motion is denied.

## II. NAB's Motion to Amend/Correct Amended Counterclaim, Amended Third Party Complaint

NAB also moves to Amend/Correct its Amended Counterclaim/Amended Third Party Complaint to add "new factual allegations based on information recently ascertained from APB documents." (Doc. 84 at 3.) NAB seeks to file these additional specific allegations pursuant to Federal Rule of Civil Procedure 15(a)(2) to support its claim for the Court's exercise of personal jurisdiction over Lockwood. (Doc 84 at 3.) Lockwood argues that the proposed amendment "would be futile in attempting to demonstrate a prima facie case of personal jurisdiction" and "NAB's proposed amended third party complaint would still be subject to dismissal under Rule 12(b)(6)." (Doc 86 at 4, 5.) Federal Rule of Civil Procedure 15 instructs the Court to "freely give leave [to amend] when justice so requires." As Lockwood provides no procedural basis for its objection and the deadline for amending pleadings has not yet been set, NAB's amendment is allowed and is considered in addressing Lockwood's Motion to Dismiss.

## III. NAB's Motion to Seal[2]

NAB filed a Motion to Seal documents attached to its Reply in its Motion for Leave to Amend/Correct. Those documents include exhibits previously designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Court's protective order, (Doc 46), and a declaration describing those exhibits in detail. As Lockwood does not contest the confidentiality of NAB's lodged documents, the Motion to Seal is granted. However, as NAB filed these documents with its Reply rather than the original Motion, giving Lockwood no opportunity to respond, the Court did not consider the documents in addressing the underlying Motion for Leave to Amend/Correct.

///

---

[2] In its Response to NAB's Motion to Seal, (Doc. 97), NAB either intentionally or unintentionally misled the Court when, in its Reply to its Motion to Amend/Correct, it described its "PVP protected SY 158" as "awnless," (Doc. 92 at 6n.4).

**IV. Lockwood's Motion to Dismiss**

    **A. Motion to Dismiss for Lack of Jurisdiction**

This Court previously determined that specific personal jurisdiction[3] over Lockwood was appropriate in this case. (Doc. 62.) Lockwood filed the instant Motion because it believes "the Court's decision appears to have relied, at least in significant part, on a misapprehension of fact regarding NAB's state of domicile" when, in distinguishing *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), "the Court stated '[u]nlike NAB, however, the plaintiffs in *Bristol-Myers* were not domiciled in the state where the action was brought.'" (Doc. 68 at 1, 6.)

The Court was mistaken in suggesting that NAB is domiciled in Arizona. However, *Bristol-Myers* remains distinguishable from the instant case in several respects. First, the defendant in *Bristol-Myers* "did not develop Plavix [(the drug that allegedly caused the plaintiffs' harm)] in California [(the disputed jurisdiction)], did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." *Bristol-Myers*, 137 S. Ct. at 1778. By contrast, NAB alleges that Lockwood's growth and distribution of its protected triticale variety was made possible because Lockwood contracted with APB, whose research operations are primarily based in Arizona. NAB also alleges that Lockwood sold the protected triticale back to Arizona-based Arizona Grain,[4] and that Lockwood directed APB/Arizona Grain to engage in breeding operations to advance the development of four genotypes of triticale, some of which contained the legally protected germplasm of NAB, in whole or part in Arizona. Second, the nonresident plaintiffs in *Bristol-Myers* did not allege that they obtained Plavix through California physicians or from any other California

---

[3] NAB still alleges only specific personal jurisdiction. Thus, general personal jurisdiction is not addressed here.

[4] The emails evidencing this sale found at Doc. 55-3 and 55-4 are not included in NAB's complaint; however, as a court may consider "any combination of the recognized methods of discovery" in making a personal jurisdiction determination, *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) the Court considers the emails here. *See also Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, at 430 n. 24 (9th Cir. 1977) ("a court may allow discovery to aid in determining whether it has in personal or subject matter jurisdiction").

source. *Id*. at 1778. Nor did they "adduce[ any] evidence to show how or by whom the Plavix they took was distributed to the pharmacies that dispensed it to them." *Id*. at 1783. NAB, on the other hand, alleges that, pursuant to a 2015 contract between Lockwood and APB, five separate genotypes of triticale, including NAB's germplasm, were delivered to Lockwood by APB for independent experimentation.

The Court maintains the remainder of its prior analysis of specific personal jurisdiction. Lockwood's Motion is therefore again denied as to lack of personal jurisdiction and improper venue.

### B. Motion to Dismiss for Failure to State a Claim

#### 1. Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). In addition, the Court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist*., 37 F.3d 517, 521 (9th Cir. 1994). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d

### 2. Count One: Infringement of PVP Certificate No. 201200083

As in its original complaint, NAB alleges in its Third Amended Complaint that, "[w]ithout authorization from NAB," Lockwood "knowingly and intentionally" "used, conditioned, marketed, sold, and/or stocked NAB's triticale varieties in the United States in violation of the PVPA" and "dispensed NAB's triticale varieties, in a form which can be propagated, without restriction to other growers, in violation of the PVPA." (Doc. 84-1 at 28–29.) However, in response to the Court's order granting Lockwood's previous motion to dismiss for failure to state a claim, NAB's Third Amended Complaint includes the additional allegation that "Lockwood was provided actual notice of Counterclaim Plaintiff's PVP rights on July 16, 2018 via a Notice letter sent from Mark Henry to Lockwood Seed and Grain and A.L. Gilbert Company." (Doc. 84-1 at 29.) That letter states:

> Attached is PVP Certificate No. 201200083 owned by my client, Northern Agri Brands, LLC ("NAB"). You are on actual notice of my client's PVPA rights. Your past and future sales of RAPTOR brand triticale are understood to be in violation of my client's federally protected intellectual property rights.

(Doc. 16-1 at 1.)

In the Court's prior order granting Lockwood's motion to dismiss, the Court relied on language from *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.*, 457 F.3d 1269, 1275 (Fed. Cir. 2006), requiring that an accused infringer be given notice that the seed it is dispensing is PVPA-protected before the infringer can be held liable. In the prior order, the Court reasoned that NAB had not plausibly alleged that Lockwood "had notice that the seeds it purchased from APB Defendants were PVPA protected" because "[e]ven if the statutory language [signifying that the seed was protected under the PVPA] was always present on NAB's bags, it is not reasonable to infer that APB Defendants would be using those same bags in reselling SY 158T as RAPTOR to Lockwood." (Doc. 62 at 13.) However, as NAB now alleges that Lockwood received notice of NAB's PVP rights through the letter described above, NAB has plausibly alleged that Lockwood was on

notice of NAB's PVPA protection. Lockwood argues that NAB's "'notice' is nothing more than a bare assertion of a violation that has been controverted by APB; it provided no analysis or facts to Lockwood." (Doc. 68 at 11–12.) But mere "notice" is the requirement under *Syngenta*, and Lockwood has cited no authority requiring that an infringing party be provided with "analysis or facts" to meet the *Syngenta* standard. Viewing the facts in the light most favorable to NAB as the Court must at this stage in the proceedings, NAB has plausibly stated a claim against Lockwood for PVP infringement.

### 3. Count Seven: Unjust Enrichment

In the Court's order addressing Lockwood's prior motion to dismiss, the Court dismissed NAB's unjust enrichment claim as preempted by the AUTSA because "NAB relies heavily on fact allegations that are based on or rooted in misappropriation of trade secrets." (Doc. 62 at 18–19.) The Court reasoned that NAB had not provided any factual allegations in support of unjust enrichment that were unrelated to theft of its proprietary information since NAB's claims were "based on APB and Lockwood's sale of RAPTOR triticale" coupled with RAPTOR's "genetic[] match[ with] NAB's SY 158T triticale variety." (Doc. 62 at 19.)

NAB's Third Amended Complaint does not alter the Court's prior analysis. NAB argues that the Third Amended Complaint "clarifie[s] that its unjust enrichment claim is based on the facts supporting its PVPA infringement claim rather than its trade secret misappropriation claims." (Doc. 70 at 13.) But NAB's PVPA infringement claim is still based solely on RAPTOR's alleged genetic match with SY 158T. NAB's unjust enrichment claim is thus preempted under even the most "narrow form of preemption" because NAB has failed to allege "any act beyond what constitutes misappropriation." *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp. 2d 1050, 1057 (D. Ariz. 2013). Moreover, NAB's caveat that unjust enrichment is asserted only "[t]o the extent any germplasm, pedigree and breeding information is found not to rise to the level of a trade secret" cannot save this claim, since "the AUTSA preempts torts based on misappropriation of information *regardless* of whether it qualifies as a trade secret." *Id.* at 1056 (emphasis added).

Lockwood's Motion to Dismiss is granted as to Count Seven.

### 4. Count Eight: Lanham Act Violation

NAB alleges that Lockwood is violating the Lanham Act "[b]y falsely designating the origin of [its] Raptor triticale line and by making false and misleading representations of fact in the selling and marketing of Raptor," (Doc. 84-1 at 38)—in other words, "by reverse passing off," (Doc. 70 at 14). "[R]eading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were not designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*)," the Supreme Court has held that the Lanham Act prohibits misleading representations regarding "the producer of the tangible goods that are offered for sale" but not misrepresentations regarding "the author of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). Thus, "a claim for reverse passing off cannot be brought to prevent the copying of intellectual property." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1012 (9th Cir. 2018).

Here, NAB tries to do exactly that. NAB does not allege that Lockwood "passed off genuine [NAB] products as [its] own" like the defendant held liable in *OTR Wheel*. *Id*. (describing a defendant who asked his competitor's supplier to "provide him with sample tires from [the competitor's] molds" and "remove [the competitor's] identifying information from the tires" in order "to use the tires to obtain business from one of [the competitor's] customers"). Instead, NAB alleges that Lockwood "cop[ied NAB's] intellectual property," *id*., by "directing APB/Arizona Grain . . . to advance the development of up to four (4) new triticale cultivars . . . some of which contained the legally protected germplasm of NAB," (Doc. 84-1 at 23), and by selling a seed variety created from NAB's misappropriated confidential and/or trade secret breeding information. "The Lanham Act . . . does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Dastar Corp.*, 539 U.S. at 34. Thus, the Lanham Act is inapplicable here. Lockwood's Motion to

Dismiss is granted as to this claim.[5]

**IT IS THEREFORE ORDERED** that Lockwood's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. 68) is **GRANTED IN PART** and **DENIED IN PART**. NAB's Third Amended Counterclaims (Doc. 84-1) Seven and Eight shall be dismissed as to Lockwood.

**IT IS FURTHER ORDERED** that NAB's Motion for Leave to Supplement Opposition to Motion to Dismiss and to Seal Document Exhibits A & B in Support of Supplemental Opposition, (Doc. 81), is **DENIED**.

**IT IS FURTHER ORDERED** that NAB's Motion to Amend/Correct Amended Counterclaim, Amended Third Party Complaint, (Doc. 84), is **GRANTED**.

**IT IS FURTHER ORDERED** that NAB shall forthwith file its Third Amended Answer & Affirmative Defenses to First Amended Complaints & Counterclaims & Third-Party Complaint (Doc. 84-1).

**IT IS FURTHER ORDERED** that NAB's Motion to Seal Document Declaration of Glenn Johnson and Exhibits 1-8 iso Reply re Motion for Leave to Amend, (Doc. 93), is **GRANTED**. The Clerk of Court is directed to file the lodged Declaration (Doc. 94) under seal.

**IT IS FURTHER ORDERED** that any party that has not yet filed an answer as of this date, shall do so **within fourteen (14) days** of the date of this Order.

Dated this 10th day of April, 2020.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

---

[5] Because *Pioneer Hi-Bred Int'l v. Holden Foundation Seeds, Inc.*, 35 F.3d 1226 (8th Cir. 1994), a case on which NAB heavily relies in its Response in Opposition, was decided prior to, and appears to conflict with, *Dastar Corporation v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), the Court did not consider *Pioneer* in its analysis.